# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KWANG I. LEE             )
                                  )
                                  )
          Plaintiff,          )     Case No. 08-2242-DJW
                                  )
v.                              )
                                  )
ORION MANAGEMENT      )
SOLUTIONS, INC. and        )
CITY OF LEAWOOD, KANSAS,  )
                                  )
                                  )
         Defendants.       )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant City of Leawood, Kansas' Motion for Summary Judgment (ECF No. 67). Defendant City of Leawood, Kansas ("Leawood") asks the Court to enter summary judgment in its favor on Plaintiff's negligence claim. For the reasons set forth below, the Motion is granted.

## I.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it "is entitled to judgment as a matter of law."[1] In applying this standard, the court views the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the nonmoving party.[2] "An issue is 'genuine' if there is sufficient

---

[1] Fed. R. Civ. P. 56(c)(2).

[2] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hirase-Doi v. U.S. West*

evidence on each side so that a rational trier of fact could resolve the issue either way."[3] "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim."[4]

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[5] In attempting to meet that standard, a moving party that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the moving party need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[6] If the moving party carries this initial burden, the nonmoving party may not simply "rest upon his or her pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof."[7] To accomplish this, "sufficient evidence [] pertinent to the material issue [] must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[8]

---

*Commc'ns, Inc.*, 61 F.3d 777, 781 (10th Cir. 1995)).

[3] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[4] *Id.* (citing *Anderson*, 477 U.S. at 248).

[5] *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[6] *Id.* (citing *Celotex*, 477 U.S. at 325).

[7] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[8] *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002) (citations and quotations omitted).

However, where "the moving party has the burden of proof, a more stringent summary judgment standard applies."[9] "Thus, if the moving party bears the burden of proof, to obtain summary judgment, it cannot force the nonmoving party to come forward with specific facts showing there is a genuine issue for trial merely by pointing to parts of the record that it believes illustrate the absence of a genuine issue of material fact."[10] "Instead, the moving party must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case."[11]

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[12]

Because jurisdiction over this matter is based on diversity of citizenship between the parties, the court will apply the substantive law of the forum state.[13] The parties agree that Kansas law governs this dispute. Thus, in resolving Leawood's Motion, the Court will apply Kansas law.

## II. BACKGROUND

Plaintiff, a resident of South Korea, was visiting his sister-in-law and brother-in-law, Michael Wellington ("Mr. Wellington"), in Leawood, Kansas in 2006. While visiting, Plaintiff played golf at the Ironhorse Golf Club and practiced on the driving range. Plaintiff brought this

---

[9] *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008)

[10] *Id.* (citations and quotations omitted).

[11] *Id.* (citations omitted).

[12] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1) (quotations omitted).

[13] *Thom*, 353 F.3d at 851 (citations omitted).

negligence action against Leawood and Defendant Orion Management Solutions, Inc. ("Orion") after suffering personal injuries while hitting golf balls on the Ironhorse Golf Club driving range on June 3, 2006.

On the day of Plaintiff's accident, the Ironhorse driving range had two ropes that extended the entire width of the driving range, which delineated where golfers could hit. The ropes were on the ground and were secured by spherical tee markers with a height of approximately three to four inches. Plaintiff was hitting golf balls on the driving range while standing between the two ropes when a ball that he hit struck a spherical tee marker, bounced back, and struck Plaintiff in the left eye. Plaintiff contends that Leawood and Orion both owed Plaintiff a duty "to exercise a reasonable and ordinary degree of care in [] making the premises safe in the operation of the Ironhorse Golf Club."[14] Plaintiff further contends that Leawood and Orion breached this duty and he sustained damages as a direct result of Leawood's and Orion's negligence.[15]

Leawood argues that it is entitled to summary judgment on Plaintiff's negligence claim for several reasons, specifically that Leawood (1) is immune from liability under the recreational use exception to the Kansas Tort Claims Act, (2) Leawood did not breach its duty of ordinary care due to the presence of spherical tee markers to hold down a rope on the Ironhorse driving range, and (3) even if Leawood did breach its duty of ordinary care, the tee markers were an open and obvious condition for which Leawood had no duty to remove or to warn Plaintiff.

---

[14] Pretrial Order (ECF No. 63) at ¶6(b)(1).

[15] *Id.* at ¶6(b)(2) and (4).

## III. FACTS

As an initial matter, the Court notes that Leawood identifies six new facts in its reply brief which Leawood contends are uncontroverted. However, by inserting these facts for the first time in its reply brief, Leawood has left Plaintiff without the opportunity to respond to Leawood's claim that these additional facts are uncontroverted. The Court concludes that it is unfair to Plaintiff to consider these additional facts provided in Leawood's reply brief because Plaintiff was not afforded the opportunity to respond to these facts.[16]

The Court finds that the following facts are uncontroverted or related in the light most favorable to Plaintiff, the nonmoving party.

1. Plaintiff is a resident of South Korea.

2. Leawood is, and at all relevant times was, a municipal corporation organized and incorporated under the laws of the State of Kansas.

3. Leawood is the owner of the Ironhorse Golf Club, a public golf course located in Leawood, Kansas.

4. There are no restrictions on who can play at the Ironhorse Golf Club.

5. Orion is, and at all relevant times was, a corporation organized under the laws of the State of Kansas, and is engaged in the business of operating golf courses in general, and operates approximately four golf courses.

---

[16] *Oleson v. KMart Corp.*, 189 F.R.D. 636, 637 (D. Kan. 1999) ("Because the defendants' statement of uncontroverted facts generally appears for the first time in their reply brief, the court deems it unfair to the non-moving plaintiff to consider those facts to which he does not have an opportunity to respond.").

6.     Orion operated the Ironhorse Golf Club pursuant to an Agreement for Management of Ironhorse Golf Club (the "Agreement"), which Agreement ran from November 1, 2003 through December 31, 2006.  This Agreement was in place throughout 2006.

7.     Christine L. Claxton ("Ms. Claxton") is employed by Leawood as the Director of Parks and Recreation Department of the City of Leawood.

8.     Ms. Claxton's job responsibilities include oversight of all of the recreational amenities, recreational programs, recreational facilities, parks, and the greenway system for Leawood.

9.     The day-to-day operation of the Ironhorse Golf Club is managed by Orion, a private "outside" management company, and Ms. Claxton oversaw the management of the Ironhorse Golf Club and provided input on an "as necessary" basis, including trips to the Ironhorse Golf Club as necessary.

10.    No Leawood employees were involved in the maintenance or work at the Ironhorse Golf Club in 2006.

11.    In 2006, Shane Gardner ("Mr. Gardner"), one of Orion's principals, was the general manager of the Ironhorse Golf Club and was responsible for laying out the driving range.

12.    Orion managed the day-to-day operations at the Ironhorse Golf Club in 2006, including the laying out of the driving range, and the layout of the driving range was done without input from Leawood.

13.    At all times relevant hereto, the back of the Ironhorse driving range had a section of concrete, with artificial mats that were used during inclement weather.  The driving range also had

a concave curved zoysia grass surface that was approximately 60 to 80 yards wide and 20 to 30 yards deep, where golfers would hit during the summer.

14.     The Ironhorse driving range grass was mowed approximately three times a week and was maintained at a height of approximately 1/2 to 3/4 of an inch tall.

15.     The Ironhorse driving range had two ropes that extended the entire width of the driving range, which ropes delineated where golfers could hit.

16.     The Ironhorse driving range did not have individual hitting stations, and golfers could position themselves from anywhere within the roped boundaries.

17.     The ropes on the Ironhorse driving range were moved nearly every day in order to give the driving range grass a chance to recover from the wear it received during the course of a day.

18.     The two ropes on the Ironhorse driving range were placed approximately eight to ten feet apart.

19.     The ropes on the Ironhorse driving range were anchored on each end by a spherical tee marker with a height of approximately three to four inches.

20.     Four tee markers were used on the front rope, and four tee markers were used on the back rope.

21.     With each rope, there was a tee marker on each end, and two tee markers in the middle of the rope.

22.     Each tee marker was placed approximately the same distance apart.

23.     The tee markers on the Ironhorse driving range were also used on the Ironhorse golf course as tee markers for special events.

24.     Mr. Gardner got the idea to use the tee markers to hold down the ropes on the Ironhorse driving range because he had seen tee markers used that way on other golf courses.

25.     Mr. Gardner acknowledged that it was possible a golf ball could strike one of the tee markers, but never thought a golf ball would strike the tee marker, bounce back, and hit someone on the driving range.

26.     Because of the way the tee markers were set up, with there only being two tee markers located on the middle section of the rope, Mr. Gardner would never have imagined that somebody would hit balls close enough to one of those markers such that he or she could hit a tee marker and have the golf ball bounce back and hit someone.

27.     Before the subject accident, Mr. Gardner was not aware of any other golfer being injured by a golf ball hit off of a tee marker.

28.     Other than the subject accident, Gerald Pirkl ("Mr. Pirkl"), Plaintiff's designated expert, had never heard of a golfer who addressed a golf ball that subsequently struck a tee marker, which golf ball then struck the golfer who initially hit the ball.

29.     Before the date of Plaintiff's injuries, Ms. Claxton was aware of three to four incidents in which a person had sustained an injury at the Ironhorse Golf Club. One involved a fall on the No. 13 fairway, another involved a fall while a golfer was retrieving a ball from a creek bed, and one or two involved a golf cart being driven off the cart path.

30.     The tee markers used on the Ironhorse driving range are common in the golf industry.

31.     Plaintiff began golfing in 1997.

32.     Plaintiff was a single level handicap, and on a par 82 course, would typically score between 80 and 85.

33.     Plaintiff considered himself a "very good golfer."

34.     Plaintiff had been in Overland Park, Kansas for at least 25 days before the subject accident.

35.     Before June 3, 2006, Plaintiff played two rounds of golf at the Ironhorse Golf Club and he practiced at the Ironhorse Golf Club every day.

36.     Before June 3, 2006, Plaintiff had hit golf balls on the Ironhorse driving range.

37.     On June 3, 2006, Plaintiff was positioned on the Ironhorse driving range, approximately halfway between the ropes at the time of the subject accident.

38.     Plaintiff was approximately one club length behind the front rope.

39.     Plaintiff was positioned approximately eight feet to the left of Mr. Wellington at the time of the subject accident.

40.     Plaintiff is a right-handed golfer.

41.     Plaintiff was four to five feet to the left of the subject tee marker at the time of the subject accident.

42.     Plaintiff was four to six feet from the subject tee marker that he struck at the time he addressed the golf ball, prior to his swing and prior to the subject accident.

43.     Plaintiff and Mr. Wellington were standing on the short cut of grass on the Ironhorse driving range at the time of the subject accident.

44.     Other than Plaintiff and Mr. Wellington, there was only one other person using the Ironhorse driving range at the time of the subject accident.

45.     Plaintiff could have picked any other spot on the Ironhorse driving range to hit golf balls.

46.     Upon arriving at the Ironhorse driving range with Mr. Wellington, Plaintiff took approximately 2/3 of the bucket of balls purchased at the driving range.

47.     Before the subject accident, Plaintiff and Mr. Wellington had been on the Ironhorse driving range for approximately one hour.

48.     Before the subject accident, Plaintiff hit approximately ten shots with his three wood.

49.     All of the approximately ten shots hit by Plaintiff with his three wood resulted in the golf ball going in its intended direction.

50.     Plaintiff hit his last three shots before the subject accident at the same target he was aiming for at the time of the subject accident.

51.     The subject accident occurred when Plaintiff struck the third from the last golf ball.

52.     On June 3, 2006, while standing between two ropes being held down by spherical tee markers on the Ironhorse driving range, Plaintiff hit a golf ball which struck a spherical tee marker located on the Ironhorse driving range, resulting in the golf ball coming back and striking Plaintiff in the left eye.

53.     Plaintiff believes he hit a "straight shot," but he "might have just shifted a little and then swung and . . . that's when it hit the – the yellow ball and ricocheted."

54.     Plaintiff acknowledged that a golf ball "usually sometimes does not go exactly where you want it to go."

55.     Before the subject accident, Plaintiff saw the ropes on the Ironhorse driving range.

56.     Before the subject accident, Plaintiff saw some of the tee markers on the Ironhorse driving range.  Plaintiff saw the tee markers on the side of the driving range, but he does not remember them being in the middle.

10

57. At the time of the subject accident, Plaintiff "wasn't paying attention," and he "wasn't focusing on" the tee markers.

58. Although Plaintiff "knew something was there," he did not know if the tee marker was yellow or some other color because he "just didn't focus on" it.

59. Plaintiff "didn't really notice the yellow ball" because "[i]t wasn't obvious and it's not like [he] looked down."

60. If Plaintiff had "seen the [tee marker], then [he] would have swung away from the [tee marker]."

61. Before the subject accident, Mr. Wellington saw the tee marker Plaintiff hit on the Ironhorse driving range.

62. The tee marker was visible for anyone who looked.

63. The tee marker was brightly colored.

64. Mr. Pirkl, Plaintiff's designated expert, believes Plaintiff could have seen the tee marker before the subject accident.

65. At the time of the subject accident, there were no obstructions on the driving range that would have precluded someone from seeing the tee marker.

66. Photographs of a tee marker similar to the one struck by Plaintiff are attached to Leawood's Motion as Exhibit 8.

67. There was no signage on the Ironhorse driving range to let golfers know where they were supposed to hit from.

68. Jeffrey Brauer, Orion's expert, could name only one other golf course that used tee markers to hold down rope on the driving range, but stated that he had seen tee markers used to hold down ropes at driving ranges "dozens" of times.

69. Cary Cozby, Orion's other expert, could not name any other golf course that used tee markers to hold down rope on the driving range, even though he worked at a golf course when he was younger and changed or picked the range quite a bit.

70. Bounce back is a consideration in designing a golf course.

71. Ground staples could have been used to tie off the ropes on the Ironhorse driving range.

72. The Ironhorse driving range is near the entrance to the Ironhorse Golf Club.

73. Ms. Claxton has been on the Ironhorse driving range and hit balls there.

74. Plaintiff had never practiced at a driving range before the Ironhorse driving range that had tee markers holding down ropes.

75. Mr. Pirkl has been involved in several cases involving personal injuries caused by ricocheting golf balls.

76. Mr. Pirkl testified that golfers typically tee off between tee markers when teeing off on a golf course.

For the reasons explained below, the Court finds that, even after viewing the evidence and all reasonable inferences drawn from the evidence in the light most favorable to Plaintiff, there are no genuine issues of material fact and Leawood is entitled to summary judgment as a matter of law under the recreational use exception of the Kansas Tort Claims Act.

## IV.    RECREATIONAL USE EXCEPTION

Under the Kansas Tort Claims Act, unless an exception applies, a "governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of [Kansas]."[17] "In order to avoid liability, the governmental entity has the burden of proving that it falls within one of the enumerated exceptions found"[18] in the Kansas Tort Claims Act.  Leawood argues that the Court must grant Leawood summary judgment on Plaintiff's negligence claim because the recreational use exception of the Kansas Tort Claims Act provides Leawood with immunity.  The recreational use exception provides,

> A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from: . . .
> (o) any claim for injuries resulting from the use of any public property intended or permitted to be used as a park, playground or open area for recreational purposes, unless the governmental entity or an employee thereof is *guilty of gross and wanton negligence* proximately causing such injury.[19]

The Kansas Tort Claims Act defines a "governmental entity" as a state or municipality.[20]

The Kansas Supreme Court has explained the policy and purpose behind the recreational use exception as follows:

> The purpose of [the recreational use exception] is to provide immunity to a governmental entity when it might normally be liable for damages which are the

---

[17] K.S.A. 75-6103(a).

[18] *Poston v. Unified Sch. Dist. No. 387, Altoona-Midway, Wilson Cnty.*, 286 Kan. 809, 812 (Kan. 2008) (citations omitted).

[19] K.S.A. 75-6104(o) (emphasis added).

[20] K.S.A. 75-6102(c).

result of *ordinary negligence*. This encourages governmental entities to build recreational facilities for the benefit of the public without fear that they will be unable to fund them because of the high cost of litigation. The benefit to the public is enormous. The public benefits from having facilities in which to play such recreational activities as basketball, softball, or football, often at a minimal cost and sometimes at no cost. The public benefits from having a place to meet with others in its community.[21]

Under the Kansas Tort Claims Act, "governmental liability is the rule and immunity is the exception."[22]

Because Leawood bears the burden of demonstrating that the recreational use exception provides Leawood with immunity to Plaintiff's claim,[23] Leawood must do more than demonstrate the absence of a genuine issue of material fact. Instead, Leawood must establish, as a matter of law, all essential elements of the recreational use exception before Plaintiff is obligated to bring forward any specific facts alleged to rebut Leawood's claim of immunity under the exception.[24] The parties agree, and the Court finds, that in order to prevail on its defense under the recreational use exception, Leawood has the burden of proving that (1) Leawood is a municipality as defined in the Kansas Tort Claims Act, (2) Plaintiff sustained injuries resulting from the use of public property intended or permitted to be used as a park, playground or open area for recreational purposes, and (3) Plaintiff's injuries were not proximately caused by Leawood's gross and wanton negligence.[25]

---

[21] *Poston*, 286 Kan. at 812-13 (quotations and citations omitted) (emphasis added).

[22] *Jackson v. Unified Sch. Dist. 259, Sedgwick Cnty.*, 268 Kan. 319, 322 (Kan. 2000).

[23] *Poston*, 286 Kan. at 812.

[24] *Pelt*, 539 F.3d at 1280.

[25] Pretrial Order (ECF No. 63) at ¶7(d).

The first two factors are not disputed. The Kansas Tort Claims Act defines governmental entity to include a municipality of Kansas, and it is undisputed that Leawood is a municipal corporation organized and incorporated under the laws of the State of Kansas. Further, it is undisputed that the Ironhorse Golf Club constitutes "public property intended or permitted to be used as a park, playground or open area for recreational purposes." In addition, the Court notes that Plaintiff states in his response brief, "*Despite the recreational use exception of the Kansas Tort Claims Act ("KTCA") applying [to] the subject controversy*, Leawood can, and should, still be found liable for gross and wanton negligence."[26] Thus, the only issue before the Court is whether Plaintiff's injuries were proximately caused by Leawood's gross and wanton negligence.

Leawood's argument with respect to the third factor is two-fold. Leawood first argues that Plaintiff only asserts a negligence claim against Leawood and failed to allege that Leawood was guilty of gross and wanton negligence. Thus, Leawood argues that the recreational use exception provides Leawood with a complete defense to Plaintiff's negligence claim. In the alternative, Leawood argues that even if Plaintiff alleged gross and wanton negligence, Plaintiff cannot point to any facts which demonstrate such gross and wanton negligence.

A. Leawood's Arguments

According to Leawood, Plaintiff never alleged that Leawood is guilty of gross and wanton negligence, but rather has only alleged that Leawood was negligent – that Leawood owed Plaintiff a duty of ordinary care and that Leawood breached this duty of ordinary care. Leawood argues that Plaintiff's negligence claim must therefore fail as a matter of law because the recreational use

---

[26] Pl. Kwang I. Lee's Mem. in Opp'n to Def. City of Leawood, Kansas' Mot. for Summ. J. (ECF No. 77) at 10 (emphasis added).

exception immunizes Leawood from claims of ordinary negligence. In support of its argument, Leawood points out that the Pretrial Order (ECF No. 63), which supersedes all pleadings and controls the course of this case, contains no allegations of gross and wanton negligence. Leawood also points out that the Amended Complaint (ECF No. 12) does not contain allegations of gross and wanton negligence. Leawood therefore argues that Plaintiff has not alleged gross and wanton negligence and should not be able to assert that claim now.

The Court's review of the relevant case law supports Leawood's argument. The Kansas Supreme Court has declared, "There is no consideration of ordinary negligence in a case in which the defendant asserts that it is immune pursuant to [the recreational use exception], and, therefore, no consideration of duty or breach. [The recreational use exception] is a *complete defense* to actions where the plaintiff *alleges only ordinary negligence*."[27] In addition, there are several Kansas cases where the plaintiff's failure to plead gross and wanton negligence was fatal to the plaintiff's action against a governmental entity where the governmental entity claimed immunity under the recreational use exception.

For example, in *Willard v. City of Kansas City, Kansas*,[28] the plaintiff sought damages for injuries he suffered after colliding with a chain link fence around a baseball diamond in a city park in Kansas City. The plaintiff alleged in his petition that the City was negligent in its installation and maintenance of the fence. The trial court granted the City's motion for summary judgment on the grounds that the City was immune under the recreational use exception. On appeal, the Kansas Supreme Court took care to note that the plaintiff had only alleged negligence in his petition and that

---

[27] *Jackson*, 268 Kan. at 331 (citation omitted) (emphasis added).

[28] 235 Kan. 655 (Kan. 1984).

the pretrial order stated that there were no amendments to the pleadings. The Kansas Supreme Court further noted that in reply to the City's summary judgment motion, the plaintiff did not dispute the City's assertion of the facts, but merely asserted that "negligence of the defendant is a fact issue to be decided by the jury and therefore not subjected to summary judgment as a matter of law."[29] The Kansas Supreme Court thus affirmed the judgment of the lower court on the grounds that the plaintiff had not produced affidavits or other evidence showing facts and circumstances from which the City's gross and wanton conduct could be inferred.

In *Tullis v. Pittsburg State University*,[30] the plaintiff "sued Pittsburg State University for injuries received during the performance of a university sponsored play."[31] The university filed a motion for summary judgment on the grounds that it was immune from liability under the recreational use exception. The plaintiff then filed a motion seeking to amend her pleadings to allege gross and wanton negligence on the part of a university employee, the director of the play. The Crawford County District Court granted the university's motion for summary judgment and denied the plaintiff's motion to amend her pleadings. On appeal, the Kansas Court of Appeals affirmed the trial court's ruling, finding that the recreational use exception included the university's theater. The court further concluded that the trial court was within its discretion to deny the plaintiff's motion to amend her pleadings to include allegations of gross and wanton negligence, which the court noted the plaintiff only filed after the close of discovery and after the defendant filed its summary judgment motion.

---

[29] *Id.* at 657 (internal quotations omitted).

[30] 28 Kan.App.2d 347 (Kan. Ct. App. 2000).

[31] *Id.* at 347.

Finally, in *Molina v. Christensen*,[32] the plaintiff filed a negligence action against Wichita State University and Benjamin Christensen for injuries sustained before a regularly scheduled intercollegiate baseball game.  The university filed an answer and reserved the defense of immunity under the recreational use exception.  The university eventually moved for summary judgment under the recreational use exception, which the trial court granted.  The Kansas Court of Appeals affirmed the trial court's decision, finding that the recreational use exception did apply to the university and the university's baseball stadium.  In reaching its conclusion, the Kansas Court of Appeals noted that the plaintiff argued for the first time on appeal that there were genuine issues of material fact as to whether the university was guilty of gross and wanton negligence.  The court refused to consider this argument on the grounds that a new legal theory cannot be asserted for the first time on appeal. In doing so, the court recognized the need to assert more than simple negligence to survive a defense under the recreational use exception, stating,

> The fact of the matter is that despite how fervently the plaintiff may wish it were not so, his petition alleged simple negligence . . ..  As we have demonstrated, *absent gross and wanton negligence*, WSU is immune from liability under the recreational use exception of the KTCA for events that took place at Rusty Eck Stadium. []  This case was framed and tried on the plaintiff's allegations; those allegations were allegations of *simple negligence only*, and that is not sufficient to overcome the recreational use exception of the KTCA. We hold that WSU is immune from liability in this case for that reason.[33]

The Court's review of the relevant law makes it clear that in order to survive Leawood's claim of immunity under the recreational use exception, Plaintiff must have asserted allegations of gross and wanton negligence.  As Leawood points out, Plaintiff has not specifically used the term

---

[32] 30 Kan.App.2d 467 (Kan. Ct. App. 2001).

[33] *Id.* at 474 (citations omitted).

18

"gross and wanton negligence" in his claim against Leawood. However, that alone does not mean that Plaintiff has not plead gross and wanton negligence. Indeed, Kansas courts have made it clear that it is not necessary for the plaintiff to use these exact words, but rather "[t]he test is whether the facts alleged disclosed the essential elements of wantonness."[34] Thus, the Court will look to Plaintiff's factual allegations to determine whether Plaintiff has made a claim for gross and wanton negligence against Leawood. In examining Plaintiff's allegations, the Court keeps in mind the test for establishing gross and wanton negligence: whether the act indicates "a realization of the imminence of danger and a reckless disregard or a complete indifference or an unconcern for the probable consequences of the wrongful act."[35]

The Court looks to the Pretrial Order, which supersedes all pleadings and controls the course of this case, for Plaintiff's allegations. In his factual contentions set forth in the Pretrial Order, Plaintiff contends that he visited his sister-in-law in June 2006, and that during his visit he played golf at the Ironhorse Golf Club, which is owned by Leawood. He further contends that on June 3, 2006, Plaintiff was hitting balls on the Ironhorse driving range when one of the balls he hit then hit a tee marker causing the ball to bounce back and strike Plaintiff in his left eye. Plaintiff contends that this caused him immense pain and led to the loss of his left eye. This, essentially, is the extent of Plaintiff's contentions. Plaintiff did not make any factual contentions that would go to show that Leawood's conduct constituted gross and wanton negligence.[36] Indeed, other than to contend that

---

[34] *Kniffen v. Hercules Powder Co.*, 164 Kan. 196, 209 (Kan. 1948) (citation omitted).

[35] *Lee v. City of Fort Scott*, 238 Kan. 421, 423 (Kan. 1985) (quotations and citations omitted).

[36] Pretrial Order (ECF No. 63) at ¶5a.

Leawood owns the Ironhorse Golf Club, Plaintiff did not make *any* factual contentions regarding Leawood in the Pretrial Order.

In addition, in identifying his theories of recovery in the Pretrial Order, Plaintiff only listed negligence; he did not list gross and wanton negligence.[37] Furthermore, Plaintiff set out the essential elements he believed he needed to prove to recover under a theory of negligence in the Pretrial Order, and these essential elements demonstrate that Plaintiff is only asserting a claim for simple negligence. Plaintiff stated his belief that in order to prevail on his negligence theory of recovery, he has the burden of proving that Leawood owed a duty of *reasonable and ordinary care* to Plaintiff in making the Ironhorse Golf Club safe, that Leawood breached this duty of care, that this breach of duty of care by Leawood was the actual and proximate cause of Plaintiff's injuries, and that Plaintiff sustained damages as a direct result of Leawood's negligence.[38] However, nowhere in the essential elements did Plaintiff identify the element required for wantonness, that is, that Leawood realized the imminent danger to Plaintiff and demonstrated a reckless disregard or a complete indifference or an unconcern for the probable consequences of the wrongful act.[39]

Furthermore, even if the Pretrial Order did not supersede all earlier pleadings, the Court cannot find any allegations of gross and wanton negligence in the Amended Complaint (ECF No. 12) either. Rather, Plaintiff's allegations amount to allegations of ordinary negligence. In sum, Plaintiff alleged that the Ironhorse driving range was not reasonably safe as a result of the placement of the tee marker by Orion, that Leawood carelessly and negligently failed to ensure that the

---

[37] *Id.* at ¶6a.

[38] *Id.* at ¶6b. (emphasis added).

[39] *Lee*, 238 Kan. at 423.

Ironhorse driving range was free of hazardous obstacles, that Leawood knew or by using ordinary care could have known of this dangerous condition, that Leawood owed a duty of reasonable care to Plaintiff, that Leawood failed to keep a safe and properly maintained driving range, that Leawood failed to ensure the driving range was free of hazardous obstacles, that Leawood failed to use ordinary care by removing the tee markers from the driving range, that Leawood knew or by the use of a reasonable degree of care could have known that there was a reasonable likelihood an injury would occur if the driving range was not properly maintained, and that the breach of duty of care by Leawood was the actual and proximate cause of Plaintiff's injuries. None of these allegations disclose the essential elements of gross and wanton negligence because none of them amount to claims that Leawood realized imminent danger and demonstrated a reckless disregard or a complete indifference or an unconcern for the probable consequences of the wrongful act.[40]

Having reviewed the Pretrial Order and the Amended Complaint, the Court concludes that Plaintiff failed to assert any allegations that would demonstrate gross and wanton negligence by Leawood. Accordingly, the Court finds that Plaintiff has not asserted a claim of gross and wanton negligence, but has only asserted a claim of ordinary negligence against Leawood. Having reached this conclusion, the Court need not address Leawood's alternative argument for summary judgment under the recreational use exception that even if Plaintiff alleged gross and wanton negligence, Plaintiff cannot point to any facts which demonstrate such gross and wanton negligence.

Because Plaintiff has not asserted a claim of gross and wanton negligence, but has only asserted a claim of ordinary negligence, it appears to the Court that Leawood has met its burden of demonstrating all essential elements for immunity under the recreational use exception. The burden

---

[40] *Id.*

thus shifts to Plaintiff to rebut Leawood's claim of immunity under the recreational use exception in order to avoid summary judgment in favor of Leawood.[41]

**B.     Plaintiff's Arguments**

Plaintiff argues that Leawood never raised this "lack of pleading" argument before and therefore has waived this argument.  Plaintiff further argues that his claim of negligence was sufficient to put Leawood on notice of his claim of gross and wanton negligence, and that it is for the trier of fact to determine the level of negligence, if any, based on the facts and circumstances of this case.  Finally, Plaintiff argues that the facts in this case support his claim that Leawood is guilty of gross and wanton negligence because the facts demonstrate that Leawood had knowledge of a dangerous condition and was indifferent to the consequences.

*1.     Waiver*

The Court is not persuaded by Plaintiff's argument that Leawood somehow waived its right to argue that Plaintiff failed to plead gross and wanton negligence by not asserting this claim earlier. First and foremost, it is Plaintiff's responsibility to properly plead his own claim.  Furthermore, it appears that Leawood has consistently asserted the recreational use exception as a defense, and that Leawood asserted this defense in the Pretrial Order.  Plaintiff certainly had opportunities prior to responding to Leawood's Motion to assert a claim of gross and wanton negligence in response to Leawood's reliance on the recreational use exception as a defense.  Thus, the Court concludes that Leawood has not waived its right to pursue this defense.

---

[41] *Pelt*, 539 F.3d at 1280.

## 2.    *Negligence vs. Gross and Wanton Negligence*

The Court is also not persuaded by Plaintiff's argument that by pleading ordinary negligence, Plaintiff put Leawood on notice of his claim of gross and wanton negligence and it is for the trier of fact to determine the level of negligence. Plaintiff appears to be arguing that his claim of ordinary negligence encompasses a claim for gross and wanton negligence, but the case law does not support this argument. Rather, contrary to Plaintiff's arguments, the case law demonstrates that negligence does not include or somehow encompass gross and wanton negligence.

Indeed, it appears that by definition, negligence does not encompass or include gross and wanton negligence. Kansas courts define negligence as "'the lack of ordinary care' or more specifically, 'the failure of a person to do something that a reasonably careful person would do, or the act of a person in doing something that a reasonably careful person would not do, measured by all the circumstances then existing [].'"[42] "In a personal injury action based upon negligence, the plaintiff must prove the existence of a duty, breach of that duty, injury, and a causal connection between the duty breached and the injury suffered."[43]

However, as Kansas courts have long recognized, gross and wanton negligence is distinct from negligence and differs in kind.[44] Kansas courts have declared, "One who is properly charged with recklessness or wantonness is not simply more careless than one who is only guilty of negligence."[45] Thus, in defining wanton conduct, Kansas courts have held that wanton conduct

---

[42] *Elstun v. Spangles, Inc.*, 289 Kan. 754, 756 (Kan. 2009) (citations and quotations omitted).

[43] *Id.* at 757 (citations and quotations omitted).

[44] *Frazier v. Cities Serv. Oil Co.*, 159 Kan. 655 (Kan. 1945).

[45] *Atchison, T & S. F. Ry. Co. v. Baker*, 79 Kan. 183 (Kan. 1908).

is more than negligence and less than wilfulness, and to constitute wantonness the acts complained of must show not simply lack of due care, but that the actor must be deemed to have realized the imminence of injury to others from his acts and to have refrained from taking steps to prevent the injury because indifferent to whether it occurred or not.[46]

In addition, according to the Kansas Supreme Court, "[W]anton conduct differs not in degree but in kind from negligent conduct, *and such a thing as wanton 'negligence' cannot exist*. If the conduct be wanton, it is not negligent. If it be negligent, it is not wanton."[47]  The fact that such a thing as "wanton negligence" cannot exist does not change even where the statute in question refers to "gross and wanton negligence."   Indeed, in *Frazier v. Cities Service Oil Co.*,[48] the Kansas Supreme Court explained, "Notwithstanding the fact the legislature used the words 'gross and wanton negligence' in our automobile guest statute, [] our decisions have noted the essential difference between negligence and wantonness, as is shown by the reviews made in a number of our decisions."[49]  The *Frazier* court thus concluded that the question for the court in a case concerning gross and wanton negligence is whether the allegations charged the defendant with wanton conduct.[50]

Furthermore, the case law discussed by the Court in Section IV.A. above demonstrates that Kansas courts will grant the governmental entity summary judgment based on the recreational use

---

[46] *Frazier*, 159 Kan. at 666.

[47] Koster v. Matson, 139 Kan. 124, 30 P.2d 107, 110 (emphasis added).

[48] 159 Kan. 655 (Kan. 1945).

[49] *Id.* at 664(citations omitted).

[50] *Id.*

exception when Plaintiff pleads only negligence. In doing so, these courts impliedly recognize that a negligence claim does not necessarily include a claim for gross and wanton negligence.

In light of the Court's review of the relevant Kansas law, the Court concludes that negligence and gross and wanton negligence are distinct from one another, and that Plaintiff's claim for negligence does not include allegations of gross and wanton negligence. The Court further concludes that Plaintiff does not put the issue of gross and wanton negligence before the trier of fact by simply pleading negligence. The Court is therefore unpersuaded by Plaintiff's second argument that his claim of negligence was sufficient to put Leawood on notice of a claim of gross and wanton negligence.

### 3. *Evidence of Gross and Wanton Negligence*

Having already concluded that the recreational use exception applies, that the Plaintiff failed to plead gross and wanton negligence, and that the recreational use exception thus provides Leawood with immunity from Plaintiff's claims, the Court need not examine Plaintiff's third argument that the facts uncovered during discovery in this case support his claim that Leawood was guilty of gross and wanton negligence.

## V. CONCLUSION

For the reasons set forth above, the Court concludes that the recreational use exception of the Kansas Tort Claims Act provides Leawood with a complete defense to Plaintiff's claim of ordinary negligence. In so concluding, the Court need not address Leawood's other arguments for summary judgment, that (1) Leawood did not breach its duty of ordinary care due to the presence of spherical tee markers to hold down a rope on the Ironhorse driving range, and (2) even if

Leawood did breach its duty of ordinary care, the tee markers were an open and obvious condition for which Leawood had no duty to remove or to warn Plaintiff.

For the reasons set forth above, Defendant City of Leawood, Kansas' Motion for Summary Judgment (ECF No. 67) is granted.

**IT IS THEREFORE ORDERED** that Defendant City of Leawood, Kansas' Motion for Summary Judgment (ECF No. 67) is granted.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 8th day of October, 2010.

s/ David J. Waxse
David J. Waxse
U.S. Magistrate Judge

cc:     All counsel and *pro se* parties